IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| E.K. B/N/F TRACY AND NICOLAS KELLER, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | C.A No. 5:25-cv-1667 |
| NORTHSIDE INDEPENDENT SCHOOL DISTRICT, | § § § | |
| Defendant. | § | **JURY DEMAND** |

## ORIGINAL COMPLAINT

NOW COMES E.K. ("the Student") by and through his attorneys in fact Tracy and Nicolas Keller (collectively "Plaintiffs" herein), files this their *Original Complaint* alleging that the Northside Independent School District (hereinafter referred to as "NISD" or "the School District") violated the various rights of the Student as more specifically pled herein. Plaintiffs reserve the right to replead if new claims and issues arise. In support, thereof Plaintiffs would respectfully show this tribunal the following:

### I. BRIEF INTRODUCTION

1.  E.K. is currently nineteen (19) years old and for all times relevant to this *Complaint* attended school in the Northside Independent School District ("NISD"). He qualified for and received special education services due to diagnoses of Autism, Speech/Language Impairment and Attention Deficit Hyperactivity Disorder ("ADHD"). E.K.'s disabilities manifest themselves in different ways, including but not limited to "stimming" by repeating words or phrases, or by moving his arms back and forth repeatedly. E.K. is very soft-spoken and also has childlike mannerisms. Overall, E.K. has difficulty communicating and expressing his emotions. He is an easy target of derision and bullying by other students. In fact, two male students in his class, both well-known by the School Assistant Principal Cortez and others for their own assaultive behaviors, harassed E.K. on numerous occasions, in class, in the cafeteria, in the halls and in the bathroom. Often when he returned to the classroom E.K. cowered in a closet, to be safe. The Classroom Teacher often found him hiding, was aware of the bullying and harassment, and who the perpetrators were but did nothing to protect E.K., even though she had an absolute duty to so. Not surprisingly and given license to do so the boys followed E.K. into a bathroom one day and sexually assaulted him.

2.  Due to the acts and omissions of the School District, E.K's rights were violated pursuant to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.,* ("Title IX"); Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq; and the 14th Amendment to the United States Constitution for which he seeks relief pursuant to 42 U.S.C. §1983.

### II. JURISDICTION

3.  Jurisdiction is conferred upon this Court pursuant to 28 U.S.C.A. §1331 and §1343 because the matters in controversy arise under the constitution and laws of the United States.

### III. VENUE

4.  Under 28 U.S.C. §1391, venue is proper before this Court because the events and omissions giving rise to the Plaintiffs' claims occurred in the Western District of Texas, San Antonio Division.

## IV. PARTIES

5. Plaintiff E.K. lives with his mother and father in San Antonio, Texas. At all times pertinent to this cause, E.K. was a student in Northside Independent School District.

6. The Defendant Northside ISD is a school district organized under the laws of the State of Texas. NISD may be served through its Superintendent at John M. Craft, 5900 Evers Road, San Antonio TX 78238, (210) 397-8500 [Telephone].

## V. FACTUAL RESUME

A. SCHOOL BOARD POLICIES & PROCEDURES AND PARENTS' RIGHTS

7. The School Board has developed policies and procedures regarding discrimination based upon sex or gender. They are based upon and taken from commentary found in the Federal Register in the rules and regulations related to Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*; *see also* 34 C.F.R. §106.31. Moreover the United States Department of Education ("DOE") promulgated a number of professional directives on bullying and harassment of students on the basis of sex or gender, and related to providing protection to students from a hostile environment with prompt and effective steps reasonably calculated to end the harassment, eliminate the hostile environment, prevent its occurrence, and, as appropriate, remedy its effects, from their own Offices of Civil Rights ("OCR").

8. Many have found their way into the Texas Education Code, Title 2 (Public Education), Subtitle G (Safe Schools); Chapter 37 (Discipline); Subchapter A (Alternative Settings For Behavior Management) and Subtitle E (Students and Parents); Chapter 26 (Parental Rights & Responsibilities).

9. They are also enunciated in the Texas Family Code, Title 5 (The Parent-Child Relationship); Subtitle B (Suits Affecting The Parent-Child Relationship; Chapter 151 (Rights And Duties In Parent Child Relationship).

10. Moreover, the Texas Family Code §261.101(b) has also made its way into the Texas Education Code. In fact, if an offender has a pattern of continuous sexual assault, especially of a minor, it may be prosecuted as a felony. Separately but in a related vein, an educator has a duty to report the sexual abuse of a minor if there is mere 'reasonable cause to believe' it has occurred, within 48 hours of receipt of that knowledge. Texas Family Code §261.101(b).

11. Taken together these federal and state laws, rules of professional directives, and the Northside Independent School District's own Board Policies & Procedures as noted below, act together as "Parent & Student Rights" with both significant substantive and procedural protections.

12. For example, NISD Board Policy FB(LEGAL) prohibits discrimination on the basis of sex as contemplated by Title IX of the Educational Acts of 1972. 20 U.S.C. §1681 *et seq.* ("Title IX"). A district's treatment of a complainant or a respondent in response to a formal

investigation. Absent extenuating circumstances, such as a request by a law enforcement or regulatory agency for the District to delay its investigation, the investigation should be completed within ten District business days from the date of the report; however, the investigator shall take additional time if necessary to complete a thorough investigation. The investigator shall prepare a written report of the investigation.

"The report shall include a determination of whether prohibited conduct or bullying occurred. The report shall be filed with the District official overseeing the investigation. If the results of an investigation indicate that prohibited conduct occurred, the District shall promptly respond by taking appropriate disciplinary action in accordance with the Student Code of Conduct and may take corrective action reasonably calculated to address the conduct. A student or parent who is dissatisfied with the outcome of the investigation may appeal through FNG (LOCAL), beginning at the appropriate level. A student or parent has the right to file a complaint with the United States Department of Education Office for Civil Rights."

13. In addition, FB(LOCAL) addresses equal opportunity for all students and discrimination or harassment and retaliation in accordance with Board Policy FFH.

14. FFH(LOCAL) states that reports of discrimination, harassment, and retaliation based upon sex or gender may be directed to the designated Title IX coordinator for students.

"The District official or designee shall promptly notify the parents of any student alleged to have experienced prohibited conduct by a District employee or another adult; or when the District receives a report of prohibited conduct that includes dating violence, the appropriate District official shall immediately notify the parent or guardian of the student who has been identified in the report as the alleged victim or perpetrator. The District may request, but shall not require, a written report. If a report is made orally, the District official shall reduce the report to written form."

"Upon receipt or notice of a report, the District official shall determine whether the allegations, if proved, would constitute prohibited conduct as defined by this policy. If so, the District shall immediately undertake an investigation, except as provided below at Criminal Investigation. If the District official determines that the allegations, if proved, would not constitute prohibited conduct as defined by this policy, the District official shall refer the complaint for consideration under FFI."

"If appropriate and regardless of whether a criminal or regulatory investigation regarding the alleged conduct is pending, the District shall promptly take interim action calculated to address prohibited conduct or bullying prior to the completion of the District's investigation. If appropriate and regardless of whether a criminal or regulatory investigation regarding the alleged conduct is pending, the District shall promptly take interim action calculated to address prohibited conduct or bullying prior to the completion of the District's investigation. The investigation may be conducted by the District official or a designee, such as the principal, or by a third party designated by the District, such as an attorney."

"When appropriate, the principal shall be involved in or informed of the complaint of sexual harassment may constitute discrimination on the basis of sex under Title IX.

15. FFH (LOCAL) also prohibits retaliation such as threats, intimidation, coercion, rumor spreading, ostracism, assault, or destruction of property, by a student or District employee against a student alleged to have experienced sexual discrimination or harassment.

16. Finally, FFG (LOCAL) addresses the affirmative duty each educational professional has to report suspected child and sexual abuse to the local Child Protective Services or Police, also as required by Texas Family Code Section 261.201. The NISD'S own policy notes that the failure to do so violates Board Policy, can be a crime in and of itself, and may subject the person to disciplinary action. Importantly, a person who has knowledge of such abuse cannot coerce or suppress someone else from reporting it.

17. Importantly, Board Policy FB incorporates the same protections whether it be harassment or discrimination on the basis of, among other items, disability under Section 504 and the ADA.

In short, students like E.K. have the right to be free from bullying and harassment on the basis

of disability, and the District has a duty to address such bullying and harassment appropriately should it occur.

18. Taken together, the District's own policies and procedures provide for extensive protection for students, like E.K., who become victims of bullying and harassment on the basis of disability. Moreover, the policies and procedures also instill extensive protection for students who, like E.K., become victims of peer-on-peer sexual harassment.

B.  ABOUT E.K.

19. E.K. was born in December 2005. He is currently nineteen (19) years old. He has been diagnosed with Autism, Speech/Language Impairment, Attention Deficit Hyperactivity Disorder ("ADHD"), and Anxiety. As a result of his disabilities, he has a difficult time communicating and expressing his emotions. When he gets nervous, anxious, or excited, E.K. 'stims' by repeating words or phrases, and at times move his arms back and forth. E.K. has a very sweet disposition and is very soft-spoken. E.K. also struggles to interpret "typical" social cues by others such as body language or facial expressions, which frequently leads to inappropriate social interactions with his same-aged peers. Such manifestations caused E.K. to become an object of derision and a victim of bullying and harassment by some of his peers.

20. Prior to being bullied, harassed and ultimately sexually assaulted, and despite some of his struggles, E.K. was very motivated in school and enjoyed studying. He did not fear groups of his peers that were near him.

21. E.K. spent most of his school day with other students that receive special education services in the general education setting. However, E.K. had opportunities to engage with his non-disabled peers, including during academic support periods, lunch, and in English class with Ms. Julie Oetting, Teacher.

C.  E.K.'S ENGLISH CLASS WITH HIS BULLIES

22. Throughout the Fall of 2023, E.K. became the target of bullying and harassment by peers, including two other students, H.G. and C.A.

23. H.G. and C.A. would verbally bully and harass E.K. during English class, many instances of which were witnessed by Ms. Oetting but were not reported. H.G. and C.A. would call E.K. names such as "bitch," "autistic," and "special ed." The boys would also touch E.K. on his shoulders with the intent to bother him and imitate E.K.'s mannerisms.

24. E.K. was also frequently left alone with his tormentors with no adult present, as at the beginning of the class period, Ms. Oetting came from another class to the English classroom. During that time, H.G. and C.A. were given free rein to harass E.K.

25. On several occasions, E.K. was found hiding in the classroom closet by Ms. Oetting due to H.G. and C.A.'s harassment. Ms. Oetting witnessed E.K. crying in the closet but did not report the incidents.

26. H.G. and C.A. also had a history of behavioral concerns at O'Connor High, with one of the boys even having previously been removed from a school due to behavioral concerns. Ms. Oetting even sent H.G. and C.A. to A.P. Cortez's office on several occasions due to their behavior toward E.K., but nothing was done at the administrative level either to stop the harassment or keep E.K. safe. Ms. Cortez never informed E.K.'s parents that he was being tormented at school.

D.  E.K. IS SEXUALLY ASSAULTED

27. On or about December 15, 2023, Ms. Oetting again witnessed E.K. being bullied by H.G. and C.A. during class. However, Ms. Oetting again did not intervene.

28. Later in the day E.K. had to use the restroom while in the cafeteria.

29. H.G. and C.A. followed E.K. into the restroom. They subsequently broke into E.K.'s locked restroom stall by force.

30. H.G. and C.A. held E.K. down, hurting his back, chest and back of his leg. They also shoved an unknown item into E.K.'s anus.

31. E.K. did not immediately report this incident for fear of being attacked again by the perpetrators.

E. POST-ASSAULT EVENTS

32. On or about December 16, 2023, Tracy, E.K.'s mother, first suspected sexual abuse when she noticed blood on the back of E.K.'s pants. She checked the back of his underwear and noticed they were bloody as well. She sent him to change his pants and underwear, then collected the bloody clothes in a Ziploc bag.

33. On or about December 23, 2023, Tracy reported strange, threatening text messages received on E.K.'s phone to the Bexar County Sheriff's Department.

34. On or about January 9, 2024, Tracy noticed that E.K.'s proficiency was decreasing in his English class. Tracy spoke to Ms. Oetting about this issue.

35. On or about January 18, 2024, H.G. and C.A. continued to harass E.K. in the courtyard at school. E.K. promptly reported this incident to Ms. Veronica Cortez, the assistant principal.

36. The same day, Mr. Micheal McNierney, the special educational department coordinator for O'Connor High School and E.K.'s case manager, reported that E.K. had kicked a trash can in class the day before. This type of behavior was unusual for E.K.

37. Also on January 18, E.K. told his mother about the December sexual assault. Tracy realized that H.G. and C.A. were in the same class as E.K. She immediately requested E.K. be removed from that classroom environment.

38. The next day, on or about January 19, 2024, E.K.'s parents reported the previous strange text messages and the sexual assault to Officer Regina Ramirez, a police officer with the NISD Police Department. This report would become Police Report #2401-03856.

39. On or about January 21, 2024, E.K.'s parents brought him to the Emergency Room at Methodist Specialty Transplant Hospital for a sexual assault exam.

40. Also on February 5, E.K.'s parents arrived on the O'Connor High School campus around 8:15 A.M. Ms. Cortez instructed them to wait inside while E.K. was called from class. While waiting, H.G. walked by and locked eyes with Tracy. Tracy said, "I know who you are."

41. H.G. then proceeded to taunt E.K. in front of his family and in front of Ms. Cortez. However, instead of reprimanding H.G., Ms. Cortez scolded the family for engaging with another student.

42. After Detective Villarreal arrived, he took a DNA swab from E.K. and collected the bagged bloody clothing from the assault from Tracy. Instead of issuing a receipt or itemized statement of evidence received for the clothing, Detective Villarreal refused to give one to Plaintiffs.

43. On or about February 8, 2024, E.K. was in the cafeteria waiting for his bus at the end of the

Tracy that E.K. was having a difficult time in her class. Specifically, E.K. was having trouble focusing and was anxious. E.K. had two (2) more classes after math, from which he would go to the cafeteria to wait for his bus.

F. EFFECTS OF THE ASSAULT ON E.K.

51. Since being sexually assaulted, E.K. has suffered physically and emotionally. He has had increased irritability, moments of anger and rage, crying episodes, trouble sleeping through the night, fears of being attacked and harassed at school, and he refuses to ride the school bus or use the restroom at school. Since the incident, E.K. has also been diagnosed with PTSD.

52. E.K. is much less trusting of other individuals outside of his family and is terrified to attend school. He has regressed in his ability to self-regulate his anxiety, ADHD, and social appropriateness. His desire and motivation to excel in school has dramatically diminished, and instead he spends more time playing games on his phone. E.K.'s family has seen these behaviors both in and outside of the school setting.

53. Further, E.K. has had to go through rigorous police interviews and visits, sexual exams, STD testing, numerous visits to doctors and therapists, and treatment for his increased acute anxiety and depression. Ultimately, the District failed to provide any supportive measures to E.K. as required by Title IX and by their own policies and procedures.

## VI. STATE ACTION

54. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth. In addition, each sentence and paragraph below, likewise incorporates by reference as if fully set forth herein, the one above it.

55. Here the School District was at all times acting under color of state and federal law when

---

school day. He became scared because his attackers, H.G. and C.A., sat down at the table next to him. No stay-away agreement nor safety plan had been implemented to keep the perpetrators away from E.K.

44. On or around February 14, 2024, Tracy arrived at the school for early dismissal. She was approached by Ms. Cortez. Tracy expressed to Ms. Cortez that E.K. is experiencing fear and anxiety due to the lack of adult supervision and monitoring in the cafeteria as students wait to board their buses. Ms. Cortez said that they do have adults in there. However, Tracy had observed no adult supervision upon her arrival on campus.

45. On or about February 19, 2024, it was again communicated to the school that E.K. was fearful of his attackers still being allowed to be near him.

46. On or around February 21, 2024, H.G. and C.A., along with four other students, were sitting together in the cafeteria. These boys began to harass E.K. by mimicking his stimming.

47. On or about February 22, 2024, E.K. stayed home from school because he was too frightened to go.

48. Later that day, E.K.'s parents were finally notified by Mr. Robert Martinez, Principal, that NISD was going to implement steps to ensure E.K.'s safety, such as Mr. Johnson escorting E.K. to the cafeteria and monitoring him in the afternoons to wait for the bus.

49. In or around this time, E.K.'s mother was trespassed from school property. E.K. became increasingly fearful because his mother could no longer come help him if he was attacked again at school.

50. On or about March 22, 2024, E.K.'s Math Special Ed Co-teacher, Hina Kothari, informed

Plaintiffs were subjected to the acts, omissions, wrongs and injuries as specified herein.

### VII. CLAIMS PURSUANT TO SECTION 504 OF THE REHABILITATION ACT

56. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

57. The School District receives federal funds and thus must follow the requisites of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 ("Section 504").

58. The jurisprudence and implementing regulations of Section 504 require that each state that receives disbursements, including the state's political subdivisions such as local school districts, must ensure all students with disabilities are given appropriate and necessary accommodations, pursuant to federal law and rules. To the degree that a policy or practice hinders honest consideration of a disabled student's unique and individualized needs, and fails to accommodate that child's disability and keep the student safe, it violates Section 504.

A. FAILURE TO PROVIDE FAPE

59. The School District failed to provide the Student a *Free Appropriate Public Education* as contemplated by the Rehab Act, and discriminated against him thereby.

B. DISPARATE TREATMENT CLAIM

60. Also, in addition and in alternative to the above, the Student asserts that the School District treated E.K. differently than his non-disabled peers, and as such E.K. contends he was a victim of Disparate Treatment.

C. FAILURE TO KEEP SAFE CLAIM

61. In addition and in alternative to the above, Plaintiffs assert that the School District failed to provide E.K. with a safe and non-hostile educational environment, and as such he is a victim of discrimination based upon disability also pursuant to Section 504.

D. FAILURE TO ACCOMMODATE CLAIM

62. The above noted facts also support a plausible claim the School District "failure to accommodate" E.K.'s disabilities pursuant to the Rehab Act and similar to the ADA claim noted below.

### VIII. CLAIMS PURSUANT TO THE ADA

63. Plaintiffs incorporate by reference all the above-related paragraphs with the same force and effect as if herein set forth.

64. In addition, and in the alternative to the above, the facts as previously described demonstrate violations of the Americans with Disabilities Act, 42 U.S.C. §12131, et seq ("ADA").

65. Specifically, and separate and apart from her Section 504 cause of action, E.K. alleges that the School District failed and refused to reasonably accommodate and modify services needed by E.K. based upon his disability, in violation of Title II of the ADA.

### IX. CLAIMS PURSUANT TO TITLE IX OF THE EDUCATIONAL ACTS OF 1972

66. Title IX of the Education Amendments of 1972 (Title IX), 86 Stat. 373, as amended, 20 U.S.C. § 1681 *et seq.*, ("Title IX"), specifically notes that a public entity may be liable under Title IX for discrimination based upon gender or gender stereotypes. The claimant must be a member of a protected class; must be treated differently because of membership in that class; the defendant entity must be on notice as to the allegations; be deliberately indifferent to those allegations and the victim must have experienced a deprivation of educational opportunities and/or other damages. E.K. easily satisfies all these threshold requirements.

## X. CLAIMS PURSUANT TO THE U.S. CONSTITUTION

A. E.K. HAS CONSTITUTIONAL RIGHTS AT SCHOOL

67. Plaintiffs contend that the acts and omissions of the School Board violated the right of E.K. as to his physical privacy and life, liberty and the pursuit of happiness, as contemplated by the Fourteenth Amendment of the Constitution of the United States for which he seeks recovery against the School District pursuant to 42 U.S.C. §1983.

68. In addition, E.K. has a cognizable property right in his education pursuant to the Constitution of the United States and the Texas State Constitution. The School Board failed to ensure that E.K. was able to enjoy such rights, and as such, seeks recovery for damages pursuant to 42 U.S.C. §1983.

B. CLAIMS RELATED TO THE 14TH AMENDMENT TO THE U.S. CONSTITUTION

1. Due Process Claims

69. Plaintiffs assert that the School District failed to sufficiently train staff to address the needs of children in general and especially the needs of a student like E.K., thereby violating his rights pursuant to the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

70. In addition, Plaintiffs contend that School District failed to sufficiently supervise staff regarding addressing the needs of children in general and especially the needs of a student like E.K.

71. Such failures by the School District were a moving force in violating the rights of E.K., as contemplated by Due Process Clause of the Fourteenth Amendment of the Constitution of the United States, for which he seeks recovery pursuant to 42 U.S.C. §1983.

2. Equal Protection Claim

72. Such failures by the School District were a moving force in violating the rights of E.K. as a class of one, as contemplated by the *Equal Protection Clause* of the Fourteenth Amendment of the Constitution for which he seeks recovery pursuant to 42 U.S.C. §1983.

## XI. RATIFICATION AND RESPONDEAT SUPERIOR

73. The Northside Independent School District Board ratified the acts, omissions and customs of School District personnel and staff.

74. Additionally, the School Board is responsible for the acts and omissions of School District employees who were otherwise responsible for the safety of each student, including E.K., pursuant to the theory of *Respondeat Superior*.

## XII. PROXIMATE CAUSE

75. Each and every of the foregoing acts and omissions by the Northside Independent School District, taken jointly and severally, constitute a direct and proximate cause of the injuries and damages experienced by Plaintiffs as specified herein.

## XIII. DAMAGES

76. As a direct and proximate result of the Defendant's conduct, E.K. has suffered injuries and damages, for which he and his parents are entitled to recover including but not limited to:

   a. Loss of equal access to educational opportunities;
   b. Nominal damages;
   c. Physical pain in the past;
   d. Medical expenses in the past;
   e. Mental anguish in the past;

    f.    Mental anguish in the future;

    g.    Mental health costs in the past;

    h.    Mental health costs in the future;

    i.    Reimbursement of educational services in the past;

    j.    Reimbursement for educational services to be paid in the future; and

    k.    Reimbursement of past and future out-of-pocket expenses incurred by the family of E.K. but for the acts and omissions of the Defendant.

### XIV.  SPOLIATION

77. Plaintiffs hereby require and demand that the School District preserve and maintain all evidence pertaining to any claim or defense related to violations, causes of action, facts, and resulting damages set forth herein and/or made the basis of this complaint including, but not limited to, statements, photographs, videotapes, audiotapes, surveillance, security tapes, business or medical records, incident reports, telephone records, emails, text messages, electronic data/information, and any other evidence, potential evidence, or potentially discoverable documents.

78. Failure to maintain such items will constitute "spoliation" of evidence, which will necessitate use of the spoliation interference rule—an inference or presumption that any negligent or intentional destruction of evidence was done because the evidence was unfavorable to the spoliator's case.

### PRAYER

Plaintiffs further pray for judgment against the School District in the manner and particulars noted above, and in an amount sufficient to fully compensate E.K. for the elements of injuries enumerated herein, pursuant to the United States Constitution, Title IX, Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act and for such other and further relief as the Court may deem just and proper in law, equity, or both.

                Respectfully submitted,

                /s/ Martin J. Cirkiel
                Martin J. Cirkiel, Esq.
                Texas Bar No.: 00783829
                Fed. ID No.: 21488

                Julianna S. Swann
                Texas Bar No. 24130061

                Cirkiel Law Group, P.C.
                1005 West 41st Street, Suite 201
                Austin, Texas 78756
                (512) 244-6658 [Telephone]
                (512) 244-6014 [Facsimile]
                marty@cirkielaw.com [Email]
                julianna@cirkielaw.com [Email]
                REPRESENTATIVES FOR PLAINTIFFS